**JURY DEMAND**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

LISA VASQUEZ, On Behalf of Herself and on
Behalf of Her Infant DAUGHTER, J.V.                    Civil Action No. 1:22-CV-3360 (PAC)

                                    Plaintiffs,        **SECOND AMENDED COMPLAINT**

                    -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION

                                    Defendant.

-------------------------------------------------------------x

      Plaintiff LISA VASQUEZ, on behalf of herself and on behalf of her infant DAUGHTER,

J.V., respectfully submit this as and for their Second Amended Complaint against the New York

City Department of Education and state as follows:

      1.     This case involves a long-standing, systemic failure to ensure that the Defendants

have developed programs and delivered appropriate services for children with disabilities,

including Plaintiff's daughter, J.V.

      2.     Plaintiff Ms. Vasquez is the parent of J.V., an 11-year-old girl diagnosed with

multiple disabilities, including being on the Autism spectrum.

      3.     Since at least 2015, Ms. Vasquez has been engaged in litigation attempting to obtain

appropriate special education services for J.V through the administrative process established by

the Defendant, purportedly to fulfil their legal obligation to address such claims.

      4.     However, due to systemic policies, practices, failures by the Defendant, J.V. has

not been provided afforded the services to which she was entitled under the law.

<u>**JURISDICTION AND VENUE**</u>

      5.     This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331

and 1343 as well as jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

7.      Ms. Vasquez is a resident of Staten Island in the City and State of New York.  She is the mother and Legal Guardian of Plaintiff J.V.

8.      Defendant New York City Department of Education ("DOE") is the local education agency responsible for providing a free appropriate public education ("FAPE") to all New York City resident students classified as students with disabilities between the ages of 3 and 21 in need of special education and related services pursuant to the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA").

9.      The New York City Law Department, with an address of 100 Church Street New York, NY 10007, is designated to receive service of process for Defendant DOE.

## BACKGROUND

10.      In 2015, Ms. Vasquez moved her two children, J.V. and J.V. 2, from Harlem in Manhattan to Staten Island.

11.      The family moved into public housing operated by the New York City Housing Authority.

12.      In the fall of 2017, Defendant gave J.V. an Individualized Education Program ("IEP"), dated November 13, 2017, and classified her as a student with a disability having a speech and language impairment. J.V. is also a child on the Autism spectrum.

13.      The DOE, among other things, deferred J.V.'s case to the Community Based Support Team for a placement in a Non-Public School ("NPS").

14.      The deferral to the CBST meant that the DOE recognized that the DOE did not have an appropriate public-school setting for J.V.

2

15.     J.V., however, was not offered an NPS placement or any other alternative placement.

16.     In May 2018, the DOE realized it could not locate a program for J.V. and, instead, proffered an interim program of 10 weekly hours of 1:1 special education teacher services ("SETSS"), as well as her related services.  However, the DOE was unable to implement those services, either.

## IMPARTIAL HEARING CASE NO. 173490

17.     On May 24, 2018, Ms. Vasquez filed an Impartial Hearing Request ("IHR1") alleging that the DOE failed to provide J.V. with a FAPE for the 2016-2017 and 2017-2018 school-years ("Case #173490").

18.     At the time, J.V. had been almost out of school for one year.

19.     As soon as the complaint in Case # 173490 was filed, J.V. was entitled to pendency pursuant to 20 U.S.C. § 1415(j).

20.     Pursuant to J.V.'s automatic entitlement to pendency under the law, the DOE was required to provide J.V. with all the services she had been entitled to receive in the last education program to be in effect prior to the filing of the IHR1.  The DOE's obligation to ensure these services were delivered to J.V. commenced upon the date of the filing of the IHR1 and lasted until Case #173490 concluded.

21.     Throughout the life of Case #173490, however, the DOE failed to do so, and failed in that regard consistently.  As a result, J.V. was intermittently out of school and most of the time without her mandated services, which were required under pendency.

22.     On June 7, 2018, Impartial Hearing Officer ("IHO") John Farago, Esq. IHO issued an interim order on pendency. *See* Dkt. No. 39 -5[1].  Pursuant to that order, the IHO ordered the DOE to provide services to J.V. as "pendency" until such time as the DOE could locate an NPS program.

23.     Those services included special education teacher support services ("SETSS") 10 hours total weekly, 1:1; Occupational Therapy ("OT") 90 minutes total weekly, 1:1; Speech Therapy ("Speech") 150 minutes total weekly, 1:1; Physical Therapy ("PT") 60 minutes total weekly, 1:1; and prepayment for private transportation back and forth from the home to the providers of each of the aforementioned services.

24.     On August 30, 2018, IHO Farago issued an Interim Order. *See* Dkt. #39-4.   The relief provided to Plaintiffs in that order included: (a) Speech five hours weekly, 1:1; (b) PT 3 hours weekly, 1:1; (c) OT 3 hours weekly, 1:1; (d) requiring the DOE to issue a Nickerson/P-1 form to permit Ms. Vasquez to pursue placement in a State-approved non-public school; and (e) changing the recommendation of SETSS, for the purpose of delivery, to Applied Behavior Analysis ("ABA") services.

25.     On October 16, 2018, IHO Farago issued a Findings of Fact and Decision ("FOFD").  *See* Dkt. #39-2.  The IHO found there to be "a prolonged and sustained denial of FAPE." *Id*. at page 69.

26.     The FOFD ordered that the 10 weekly hours of SETSS should be increased to 40 hours per week of "expert ABA services" as long as the DOE fails to provide a NPS placement and reduced to 10 hours per week of home-based ABA if an appropriate NPS is provided. Further, the FOFD directed the DOE to make J.V.'s program one of 52-week services.  In addition, the

---

[1] The various administrative orders in this case have been entered on the docket in other filings in this case.

IHO ordered that a pre-paid bank of car service be made available in the amount of at least $400 per week for transportation.

27.    Under New York State law, ABA services are to be provided and/or supervised by individuals licensed by New York State, called Licensed Behavior Analysts ("LBA"), as well as others with appropriate credentials.

28.    However, in the FOFD, IHO Farago capped the rate for ABA services at $200, an hour, a rate that was too low to facilitate implementation of the ABA services in Staten Island. *See* Dkt. #39-2 at page 70.

29.    Further, although IHO Farago found J.V. was entitled to compensatory services, he refused to award that at the time of the FOFD because "the record does not reflect that the student has the capacity to utilize any greater amount of services than here ordered on a weekly basis." *See* Dkt. #39-2 at page 6.

30.    Ms. Vasquez appealed FOFD only insofar as it capped ABA services at $200 per hour and for not awarding compensatory services.  No other aspects of that FOFD were appealed. *See* Dkt. #39-7 at page 9-10.  The DOE did not cross-appeal. *Id.*

31.    Thus, the other relief in the FOFD regarding J.V.'s new educational program and placement, related services program and transportation relief, all as numerated above and detailed in the FOFD, became final and binding on the DOE.

32.    However, the DOE continued the same path it had been taking with respect to J.V. for years.  The DOE did not implement the services that IHO Farago ordered, either under the prior pendency and interim orders, or under the FOFD.

33.    On January 10, 2019, the SRO issued a decision in SRO No. 18-135, reversing IHO Farago's denial of compensatory relief, vacating the rate cap and remanded the matter back to IHO Farago for further proceedings on these issues.

34.    On February 28, 2019, as the case had been remanded for specific issues, IHO Farago issued a second Order on Pendency dated February 28, 2019.  IHO Farago ordered that retroactive to filing of IHR1 and until the case concluded or the parties agreed otherwise, the DOE was to provide J.V. (i) ST five hours per week 1:1, (ii) PT three hours per week 1:1, (iii) OT three hours per week 1:1, (iv)  SETSS (that could be utilized for ABA services) 40 hours per week 1:1 and (v) safe transportation back and forth from the home to each service provider. *See* Dkt #35-5 at page 5.

35.    Case #173490 did not conclude until a final order was issued on August 27, 2020. *See* Dkt #39-3.   The parties had no other agreements relating to services and therefore, the DOE was obligated to provide J.V. all the services numerated above from the filing date of IHR1 through August 27, 2020.

36.    The DOE, however, continued with its course of conduct in failing to provide J.V. with her required education and services.

### MS. VASQUEZ LOCATES THE REECE PROGRAM FOR J.V.

37.    In May 2019, while Case #173490 was pending, the DOE did not continue to search for and/or locate services to implement J.V.'s pendency, as was its obligation to do under the IDEA.

38.    Ms. Vasquez was left to her own to find providers and schools.

39.    Ms. Vasquez identified the Reece school ("Reece"), which is a state-approved NPS, as she had no other option.  Reece was the only school on the state-approved NPS list that agreed to accept J.V.

40.    However, Reece was not an appropriate setting.

41.    Reece was harmful and damaging to J.V., who was attacked by other students daily verbally, physically and sexually.

42.    Ms. Vasquez's requests to the Reese school for help went unheeded.

43.    Instead, in response to Ms. Vasquez's pleas for help to Reece personnel, in or about May 1, 2020, Reece informed Ms. Vasquez that J.V. would not be allowed to return for the upcoming 2020-2021 school year and remain enrolled at Reece.

44.    Moreover, services had stopped even earlier than that, in March 2020, as Reece was closed for in person learning and J.V., due to her disabilities, was not capable of online instruction. *See* Dkt #39-8 at page 7.

45.    Even during her time at Reece, J.V. received only a fraction of the services she was entitled to under the second pendency order issued in Case #173490.

46.    Under the IDEA, children attending state-approved private schools have the same rights to a FAPE as students attending public schools and the DOE remains responsible to ensure that they are receiving all their services.

47.    Thus, notwithstanding the fact that Reece is a private school, the DOE remained responsible for ensuring J.V. was receiving her mandated services per the orders issued in and pendency while she was in attendance.

48.    From March 2020 through August 2020, despite the fact that the DOE was obligated to implement her pendency as well as the unappealed provisions of the FOFD, which had become final, the DOE refused to do so.

49.    Ms. Vasquez had in fact requested Defendant provide placement and services to J.V. as it was required to from the time J.V. was no longer receiving services from Reece. Defendant did nothing.

50.    On August 27, 2020, IHO Rona Feinberg, Esq, who replaced IHO Farago upon his recusal, issued another final decision and order in Case #173490 ("FOFD II"). The education program and services that J.V. was entitled to receive had already been established by the prior FOFD, as IHO Farago's rulings regarding those programs and services had not been appealed and had previously become final and binding.

51.    The sole purpose of the hearings that resulted in FOFD II was to determine the appropriate amount of compensatory services that J.V. was entitled to for the deprivation of FAPE for the 2016-2017 and 2017-2018 school years.   *See* Dkt #39-3 at page 3.

52.    In FOFD II, IHO Feinberg ordered compensatory services for the 2016-2017 school year of (i) 400 of 1:1 special education itinerant teacher services or SETTS to be used for 1:1 tutorial instruction, which could also be utilized as ABA; (ii) 40 hours of PT 1:1; (iii) 40 [minutes] per week of ST 1:1 that were not provided; and (iv) 40 minutes per week of occupational therapy 1:1 that were not provided. To implement the ST and OT compensatory awarded, the DOE was to determine how many weeks were missed.  *See* Dkt #39-3 at page 11.

53.    IHO Feinberg ordered compensatory services for the 2017- 2018 school year in the amount of: (i) 40 hours per week of 1:1 SETSS for July and August 2017; (ii) 10 hours per week of 1:1 SETTS for the weeks that JV was at a private program from September to mid November

2017; (iii) 40 hours per week of 1:1 SETTS for the time that JV was at home and not attending school, from mid-November to the end of the 2017-2018 school-year; (iv) ST of five hours per week 1:1; (v) PT three hours per week 1:1; (vi) OT therapy three hours per week 1:1; (vii) counseling once per week in a group of two for 30 minutes if possible, otherwise 1:1; and (viii) four hours of parent training and counseling.  To implement all compensatory awarded for the 2017-2018 school year, the DOE was to determine how many weeks of each service were missed. *See* Dkt #39-3 at page 12.

54.    IHO Feinberg ordered the DOE to arrange for the delivery of all compensatory services within 30 days, funding allowances if Ms. Vasquez needed to get her own providers, and transportation back and forth from the home to any service provider.  *See* Dkt #39-3 at pages 11-12.  The DOE did not do as ordered.

## IMPARTIAL HEARING CASE NO. 193432

55.    On April 1, 2020, Ms. Vasquez filed a second Impartial Hearing Request, requesting relief for the 2018-2019 and 2019-2020 school years ("IHR2").  Among other things, she requested that the DOE comply with the prior impartial hearing orders and provide compensatory services for the number of hours of services that J.V. should have received during 2019-2020 school year pursuant to the Second Pendency Order, but Defendant failed to deliver ("Case #193432").  *See* Dkt #39-8 at page 2.

56.    On September 13, 2020, in a final decision and order ("FOFD III"), IHO Feinberg found that for the 2018-2019 school year, the DOE was obligated to deliver all services required under the orders issued in Case #173490, including in the FOFD and pendency orders issued in that case.  Case #173490 had still been open through the end of the 2018-2019 school year, and

thus, the DOE's obligations to provide the specific education program and services detailed in those orders were already in place. *See* Dkt #39-8 at page 8.

57.    For the 2019-2020 school year, Ms. Vasquez requested compensatory services for all SETSS/ABA services and all the related services J.V. was entitled to receive that year but were not delivered.  For this request as well, IHO Feinberg found that the DOE was obligated to deliver all services required under the orders issued in Case #173490, including the FOFD and pendency orders issued in that case, because that case had still been open through the end of the 2019-2020 school year.  Thus, the DOE's obligations to provide the specific education program and services detailed in those orders were already in place. *See* Dkt #39-8 at page 9.

58.    Additionally, as it pertained to the 2020-2021 school year, Ms. Vasquez had also raised in IHR2 the issue that the DOE had failed to develop and appropriate IEP for J.V.  Therefore, on September 13, 2020, IHO Feinberg ordered the DOE "to hold an IEP meeting and develop an IEP commensurate with IHO Farago's Decision and Order dated October 16, 2018 [i.e., the FOFD]," unless Ms. Vasquez was appealing FOFD II.  The reason for that was, as IHO Feinberg noted, if there was such an appeal, the DOE would be required to deliver all services to J.V. as ordered in Case# 173490 under pendency since the case would remain open if it was under an appeal.

59.    Ms. Vasquez did not appeal the FOFD II.  The DOE did not appeal FOFD III. Thus, for the 2020-2021, Ms. Vasquez had obtained a final order through the administrative impartial hearing process, requiring the DOE to develop an IEP going forward for the 2020-2021 school year that required the DOE to provide an education program, related services and transportation as ordered in the FOFD.  Namely, the DOE was obligated to develop an IEP with (a) Speech five hours weekly, 1:1; (b) PT 3 hours weekly, 1:1; (c) OT 3 hours weekly, 1:1; (d) requiring the DOE

to issue a Nickerson/P-1 form to permit Ms. Vasquez to pursue placement in a State-approved non-public school; (e) 40 weekly hours of SETSS or ABA if the DOE fails to provide a NPS placement and reduced to 10 hours per week of home-based ABA if an appropriate NPS is provided; (f) 52-week services; and (g) and prepaid transportation.

60.    The DOE ignored this as well and did not develop such an IEP or provide those services in the 2020-2021 school year.

## MS. VASQUEZ LOCATES THE LEAP PROGRAM FOR J.V.

61.    In May of 2020, Ms. Vasquez identified Leap/Dyslexia Associates ("Leap") as a potential services provider – but not a school – for a fraction of the services J.V. was entitled to receive.  As Defendant continued to intentionally and deliberately refuse to provide any placement or services, and with little options available, Ms. Vasquez sought to have J.V. enrolled in the Leap program.  Ms. Vasquez asked Defendant to facilitate that enrollment, but Defendant ignored her requests and again, offered no assistance.

62.    In August 2020, due to Ms. Vasquez's unrelenting efforts to advocate on behalf of J.V., she was able to have J.V. enrolled at Leap and she began attending Leap.  However, Leap could only provide a fraction of the services J.V. was entitled to, namely, only 4 hours per week of services similar to SETSS.  Ms. Vasquez placed J.V. in the Leap program due to having no other choice, as the Defendant continued to refuse to comply with, and deliver, all the services J.V. was entitled to receive under the previous impartial hearing orders referenced above.

63.    J.V. did not receive the full range and amounts of education programs and services to which she was entitled to receive from the Defendant for the 2020-2021 school year pursuant to FOFD III.  Specifically, Defendant was required to create and implement an IEP with all the education programs and services awarded in the FOFD, but failed to do so.

11

64.     For the 2020-2021 school year and 2021-2022 school year, J.V. attended the LEAP program so that at least she could receive some of the services she was entitled to receive from Defendant.  During those two school years, Ms. Vasquez continued to seek enforcement of J.V.'s right to receive all the special education and services she was entitled to receive from Defendant. Ms. Vasquez was in constant contact with Defendant.  She requested that Defendant abide by the impartial hearing orders previously issued and provide J.V. a special education placement and all the services she was entitled to receive, but Defendant continued to do nothing.

65.     In the summer of 2022, Leap advised Ms. Vasquez that J.V. cannot return for the 2022-2023 school year. Ms. Vasquez was again in contact with Defendant to request a placement and services for the 2022-2023 school year.  Defendant has done nothing, and continues to intentionally and deliberately discriminate against, and neglect, J.V.  Nothing – not one placement, not any services provider, not a single offer of an option for special education or services – has been offered by Defendant for J.V.

66.     J.V. did not receive a proper placement and did not receive hundreds of hours of SETSS or ABA, OT, PT or Speech for the 2021-2022 school year.

67.     Ms. Vasquez did not commence administrative proceedings for the 2021-2022 school year as it would have been pointless.  J.V. already had hundreds of hours of services the DOE was obligated to provide as compensatory services that year, and the DOE refused to provide any.  Thus, it was evident that the DOE had no willingness to provide any services to J.V.  even if ordered by an IHO to do so.

68.     All Ms. Vasquez's efforts for the prior school years in obtaining administrative orders was for naught because the DOE simply ignored the orders and refused to comply.  Nothing

had changed and there was no existing fact demonstrating that utilizing the impartial hearing

process for the 2021-2022 school year would have done anything for J.V.

69.    To the contrary, the existing evidence of the DOE's steadfast and consistent refusal

to abide by prior impartial hearing orders demonstrated the futility of proceeding that way again.

### **DEFENDANT'S DEPREVIATON OF PLAINTIFFS' RIGHTS**

70.    Thus, Defendant's pattern of discrimination and neglect is continuing.  Because

Defendant has not provided any new placement or services providers to J.V. for the 2022-2023

school year, she remains intentionally and deliberately neglected by the Defendant with no special

education or services being provided to her.

71.    In all, the DOE has failed to deliver thousands of hours of various special education

and related services that it was ordered to provide to J.V. after two separate impartial hearings that

directly ordered the DOE to provide a specific education program and services for the 2018-2019,

2019-2020 and 2020-2021 school years.  J.V. also remains with no offer of placement or providers

for any services to which she is entitled to receive for the 2022-2023 school year.

72.    As detailed above, Ms. Vasquez took all the steps required to seek administrative

remedies available to her under the IDEA to obtain appropriate special education and services for

J.V. for the 2018-2019, 2019-2020 and 2020-2021 school years.  Ms. Vasquez obtained

administrative orders in impartial hearings requiring Defendant to provide appropriate special

education and services to J.V. for each of these three school years.   Yet, Defendant did not abide

by such orders and intentionally and deliberately refused to provide J.V. the special education and

services to which she was entitled to receive.

73.    Moreover, even the Reece and Leap placements obtained by Ms. Vasquez solely

due to her own efforts that were funded by Defendant was harmful to J.V.

74.     Defendant has engaged in a custom and practice to deprive students with a disability their right to a free and appropriate education and to refuse to follow and abide by administrative orders issued from impartial hearing officers.  This custom and practice was utilized against J.V., as Defendant has refused to provide a free and appropriate education for several years and even after multiple administrative orders were issued requiring Defendant to do so.

75.     Defendant's custom and practice to deprive students with a disability their right to a free and appropriate education was also utilized specifically as to parents of students that seek to enforce their rights and their children's rights to a free and appropriate education.  Defendant seeks to squash any attempt to make it change its custom and practice of depriving students with a disability to their right to a free and appropriate education by disincentivizing parents from pursuing these rights.  Defendant engages in intentional wrongful conduct against parents, and in the case of Plaintiffs, it did so by retaliating against Ms. Vasquez and using another New York City government agency to take action against her to her substantial detriment.

76.     In this case, Defendant, in bad faith, intentionally and deliberately refused to provide J.V. the special education and services to which she was entitled.  Defendant did so repeatedly, in the hopes that Ms. Vasquez will give up her pursuit.  Defendant even deliberately and intentionally ignore administrative orders requiring Defendant to take specific action.

77.     Defendant intentional and deliberate discriminatory conduct as to J.V. has taken place over a number of year and in defiance of administrative orders.  Ms. Vasquez exhausted all her administrative remedies through the impartial hearing system that resulted in orders granting her final relief for three straight school years, 2018-2019, 2019-2021 and 2020-2021.  Defendant's deliberate, intentional and wrongful action were taken in bad faith and in furtherance of its custom

and practice to deprive students with a disability their right to a free and appropriate education and to squash any attempt to make it change its custom and practice.

## DEFEDNANT'S RETATLIATION AGAINST MS. VASQUEZ

78.    Defendant has repeatedly gone so far in its attempt to squash Ms. Vasquez's effort to enforce her rights and the rights of J.V. that it retaliated against her by making false allegations of "educational neglect" and other claims beginning in 2017 and lasting through 2021.

79.    In 2017, a DOE employee called the New York City Administration of Children's Services ("ACS") while IHO Case# 173490 was filed and pending.

80.    An ACS employee, Salvatore Banchetto, made countless visits pursuant and ACS's investigation caused immense trauma.  The investigation lasted into 2018. Ultimately, this investigation closes as the allegations were unfounded.

81.    In 2019, again a DOE employee called ACS as retaliation for Ms. Vasquez continuing to pursue her administrative remedies.  An ACS employee, James Gray, made countless visits over the course of 60 days and an intensive and intrusive investigation process ensued, which caused immense suffering to Ms. Vasquez and her children.  The investigation also caused embarrassment as Ms. Vasquez and her children lived in public housing.  The investigation caused their neighbors not to engage with Ms. Vasquez and her family.

82.    This investigation likewise closed and the allegations were found to be baseless.

83.    In the spring of 2020, Ms. Vasquez was desperately trying to find a placement of J.V. as Reece no longer allowed her to attend their school.  As part of Defendant's intentional, deliberate and wrongful custom and practice to squash efforts by parents to enforce their children's rights, a member of the CSE used this difficult time to file a false complaint with ACS against Ms. Vasquez.

84.    Finally, in June 2021, ACS closed its investigation against Ms. Vasquez when it became clear that the allegations against Ms. Vasquez had no basis.  The investigation took an emotional and financial toll on Ms. Vasquez and her children.

85.    However, the DOE still did not stop.  In May or June of 2022, another DOE employee made allegations to ACS against Ms. Vasquez.  An ACS employee, Mariya Vugenshteyn, made countless visits over the course of 60 days.  The investigation process again caused immense suffering and embarrassment.

86.    In each of these investigations, the pattern was similar.  Defendant, through a CSE team member or other employee, provided false information to ACS regarding Ms. Vasquez that led to a lengthy investigation.  The false claim included the false allegations that Ms. Vasquez engaged in education neglect by refusing to send J.V. to school and refusing to allow special education and related services to be delivered to J.V., and that Ms. Vasquez committed other acts that required ACS intervention.

87.    The DOE employees have provided false information in bad faith and with gross misjudgment.  Defendant knew that it had failed repeatedly for years to provide special education and services, including a school placement, to J.V. and therefore knew she had not engaged in educational neglect.  To the contrary, Ms. Vasquez was doing all she could to provide an appropriate education to J.V. because Defendant, the one responsible for providing that education, refused to do so.

88.    Defendant took these steps for all these years to retaliate against Ms. Vasquez for pursuing her legal rights to secure a free and appropriate public education for J.V. and in order to continue its pattern of denying J.V., as a student with a disability, access to a free and appropriate public education.

89.    Defendant, knowing that it fails to provide schooling and services for J.V., and knowing that Ms. Vasquez would do anything she could to assert J.V.'s rights to receive a free and appropriate education, sought to ensure they would not have to fulfil its obligations to Ms. Vasquez and J.V.  Defendant did so by initiating and fueling this false campaign against Ms. Vasquez and attempting to have ACS remove her children from her home.

90.    These actions were done deliberately, intentionally and wrongfully as part of and in furtherance of Defendant's custom and practice to deprive students with a disability to their right to a free and appropriate education and to squash any attempt to make it change its custom and practice.

91.    Defendant did so to retaliate against Ms. Vazquez for having continuously pursued J.V.'s right to FAPE over the years.  Defendant retaliation was also done in an attempt to ensure that Ms. Vasquez would no longer be able to enforce J.V.'s rights by having ACS remove J.V. from Ms. Vasquez's custody.

92.    Defendant's actions in continuously denying J.V. her right to a free and appropriate education and retaliating against Ms. Vasquez for attempting to enforce those rights were done intentionally, deliberately, wrongfully and in bad faith to discriminate against J.V. and Ms. Vasquez.

### DEFENDANT'S FAILURE TO IMPLEMENT ORDERS IS DUE TO LONG-STANDING SYSTEMIC FAILURES

93.    L.*V. v. New York City Dept. of Educ*., 1:03-cv-9917-LAP-KNF (S.D.N.Y.), ("L.V.")  is a class action to correct longstanding, systemic delays and failures of the DOE to implement impartial hearing orders in New York City, including findings of facts and decisions.

94.    In *L.V.* the DOE is under a consent decree (S.D.N.Y. 1:03-cv-9917, Doc. 120, 236-1).

95.    In *L.V.*, class members have certain rights, while also reserving parent's rights to individually litigate remedies for individual violations.

96.    J.V. is a *L.V.* class member generally, as well as a member of the "Injunctive Relief Subclass," which includes "(1) all persons . . . who obtain  . . . a favorable Order by an Impartial Hearing Officer against the DOE  . . . and (2) fail or failed to obtain full and timely implementation of such Order or settlement." *L.V.* Dkt #236-1 ¶ 1(r).

97.     Under the *L.V.* consent decree, DOE funds Independent Auditors to verify whether or not the DOE implemented an order or decision.

98.    When the Auditor notifies the DOE that it has identified a failure to implement by the DOE, the DOE is required to send an LV Notice to the Parent.

99.    The LV Notice has evidentiary weight in Court under the decree; by its terms, the notice constitutes "*prima facie*" evidence that the DOE has failed to implement an FOFD in any enforcement action and entitles the Parent to expedited discovery.

100.    The L.V. Plaintiffs have petitioned the Court to enforce this provision after the DOE's counsel admitted to the Court that the DOE had unilaterally discontinued notices to at least 12,689 parents, which would have included Ms. Vasquez.

101.    Ms. Vasquez finally received long-belated L.V. notices relative to the DOE's failures as alleged herein.  On December 13, 2022, Ms. Vasquez received at least 6 such notices of the DOE's failure to timely implement administrative orders.  Each establishes prima facie evidence of non-enforcement and entitle her to expedited discovery.

102.    According to statements made by the DOE's counsel in *L.V.*, the DOE has failed to issue at least 12,000 orders issued by impartial hearing officers on behalf of children, according to the auditors who are responsible for implementing orders.

103.    If a child is entitled to an *L.V.* notice, it means an auditor determined that the DOE did not implement an order.

104.    Thus, it is clear that the DOE did not implement a significant number of the orders for whom L.V. notices were required.

105.    In fact, due to the systemic failure to implement orders, the L.V. Plaintiffs returned to Court and obtained an order of a special master, whose role it is to propose recommendations for resolving the long-standing non-compliance in this area.

106.    The DOE has been aware that the number of impartial hearing cases has been growing and therefore, the number of orders that the DOE had to implement has also been increasing.

107.    Despite the increase in the number of hearings and orders over the period of time at issue, the DOE has not ensured that they have sufficient staff resources, procedures, policies, protocols and computerized systems in place to facilitate timely implementation of orders.

108.    Further, the DOE lacks the service capacity to implement services to children with Autism or on the Autism spectrum.

109.    Moreover, the DOE is aware that Staten Island is a shortage-area with respect to provision of related services, but the DOE has not taken any steps to increase the number of related services providers or to create incentives and permissions for DOE teachers to provide after-school services to children who have orders or IEPs that are not be in implemented with respect to related services.

110.    The DOE implements system-wide blanket policies and practices that deprive the rights of students with disabilities.  Specifically, the DOE offers only a limited and finite menu of services to children with disabilities who are entitled to a FAPE under the IDEA.

111.    Rather than engage in an individualized approach as required by the law, IEP teams only have a limited set of options available at an IEP meeting.

112.    Regardless of the number of times a parent like Ms. Vasquez may win "off-menu" services, accommodations and supports, every year, at the IEP meeting, the DOE's staff are unable to consider continuation of those services and supports.

113.    Instead, the parents can only pursue services through litigation.

114.    In addition, in a situation such as J.V.'s case, where the DOE admits that it does not have a public-school option, there are only a limited number of NPS Programs available for children with Autism or on the Autism spectrum.  None of those programs provide services to children with J.V.'s profile.

115.    The DOE does not offer a 1:1 instructional ratio or a 2:1 instructional ratio for children with Autism or on the Autism spectrum.  The Parent of any child that requires a special education class, with less than six children or a 1:1 or 2:1 instructional ratio, must engage in litigation.

116.    The DOE does not recommend ABA on an IEP for a child with Autism or on the Autism spectrum unless those services are obtained *via* litigation.

117.    The DOE does not recommend after school special education and related services on an on an IEP for a child with Autism or on the Autism spectrum unless those services are obtained *via* litigation.

118.     The DOE does not recommend 52-week school year services and any parent of any child who needs such a program must engage in litigation.  Here, Ms. Vasquez has specific administrative orders requiring a 52-week program and the DOE has never abided by that requirement and never has created a 52-week IEP for J.V.

119.     The DOE does not recommend home-based special education and related services on an on an IEP for a school-age child with Autism or on the Autism spectrum who is also recommended for a school-based program unless those services are obtained *via* litigation.

120.     The following services are some examples of services that cannot be recommended on J.V.'s IEP despite her entitlement to these services.  These services are not offered by the Defendants absent litigation as a consistent and adopted policy:

a.     1:1 instruction by a teacher during the school day;

b.     ABA;

c.     ABA Supervision;

d.     Home-based special education services (other than services through the Home Instruction Program);

e.     Home-based related services;

f.     After-school special education and/or related services;

121.     Defendants have also adopted illegal policies and procedures relative to transportation accommodations.

122.     Even more egregious, even when a parent, like Ms. Vasquez, wins ABA and the services after litigation, the DOE does not implement those services as a matter of policy.

123.     The DOE's failure to implement the services is thus not an isolated incident, but a systematic failure and accepted course of illegal conduct.

124.    Specifically, as it relates to ABA services, the DOE has adopted a policy of not providing ABA services and of failing to implement ABA services as pendency even after they were awarded.

125.    As noted above, the DOE does not offer ABA on IEPs and cannot directly implement ABA through the hearing process.

126.    When, as here, an order for ABA is issued by a hearing officer, the DOE unilaterally determines that the parent should be obligated to find the provider.

127.    J.V. has been subject to these policies and practices and continues to be subjected to these policies and practices.

## PLAINTIFFS CAN ONLY PURSUE THEIR CLAIMS IN THIS COURT

128.    There is no remedy through the administrative process to address the claims raised here, as IHOs do not have authority to order the Defendants to refrain from applying policies and practices to children like J.V.

129.    Additionally, Ms. Vasquez has already exhausted her remedies to the extent that she was required to do so.

130.    Further exhaustion would be futile or is not required.  Ms. Vasquez has spent years in the administrative process, obtained multiple pendency and final orders covering at least three different school years, and most of the services awarded remained undelivered.

131.    Moreover, exhaustion is not required because Plaintiffs seek damages. In *Perez v. Sturgis Pub. Sch.*, 215 L. Ed. 2d 95, 143 S. Ct. 859 (March 21, 2023), the Supreme Court held that when, as here, a parent seeks damages under another federal law, given that damages are not available under the IDEA, parents are not required to exhaust their remedies relative to damages claims. Thus, here, Plaintiffs' claims do not require exhaustion.

**THE DAMAGES INFLICTED UPON PLAINTIFFS BY DEFENDANT**

132.    J.V. is many years behind her peers as a direct result of these years of egregious, willful and intentional violation of J.V.'s rights, and she has been permanently damaged as a result.

133.     J.V. has not received any OT, PT or Speech for the past three years.  She has not received a placement in a school program, and therefore has not been able to attend a school, for almost three years due to the Defendant's continuous intentional and deliberate discriminatory conduct towards Ms. Vasquez and J.V.

134.    J.V. is now eleven-years old and should be in the sixth-grade and on a sixth-grade level in her academics.  Due to Defendant's continuous intentional and deliberate discriminatory conduct, J.V. is many years behind her peers, she cannot read, write, spell, or do anything else academically at her grade/age level.  Indeed, she is on a first or second grade level in all academic areas.  She is also socially and emotionally well below her peers because of all of the years of Defendant's discrimination and neglect.

135.    J.V. has suffered and continues to suffer extreme emotional, psychological, and physical damage.  J.V. is in danger of not being able to grow into an adult that can function in society, which is a situation she would never have been in if Defendant had not discriminated against her all these years.

136.    As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages: (a) severe emotional distress; (b) loss of educational opportunity; (c) loss of ability to earn income; (d) medical expenses and (e) attorney's fees and costs.

**FIRST CLAIM– DEPRIVATION OF J.V.'S RIGHTS**

**(42 USC § 1983)**

137.     Plaintiffs reallege the allegations contained in paragraphs 1-136 as if fully stated herein.

138.     The DOE, acting under the color of state and federal law, deprived J.V. of the relief that she was entitled to receive under pendency.

139.     The DOE, acting under the color of state and federal law, deprived J.V. of the relief that she was entitled to receive under interim orders and FOFD, FOFD II and FOFD III.

140.     The DOE, acting under the color of state and federal law, deprived J.V. of the special education and related services to which she was entitled for the 2019-2020 school year.

141.     The DOE, acting under the color of state and federal law, deprived J.V. of special education and related services to which she was entitled for the 2020-2021 school year.

142.     The DOE, acting under the color of state and federal law, deprived J.V. of special education and related services to which she was entitled for the 2021-2022 school year.

143.     J.V. was entitled to these services for each of the aforementioned school years under federal and state law, including under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq.

144.     Defendant's actions were part of and in furtherance of its custom and practice to deprive students with a disability to their right to a free and appropriate education.  This custom and practice was utilized in a particular against J.V.

145.     Defendant's action were intentional, deliberate and wrongful.

146.     J.V. has been damaged by the repeated denial of these services.

147.    Ms. Vasquez has exhausted all administrative avenues and obtained multiple administrative orders after impartial hearings requiring Defendant to provide special education and services to J.V.  Defendant, as part and in furtherance of its custom and police, has refused to follow these orders.

148.    Moreover, exhaustion is not required for Ms. Vasquez to obtain relief.

149.    As a direct and proximate result of the acts of Defendant, J.V. suffered the following injuries and damages: (a) severe emotional distress; (b) loss of educational opportunity; (c) loss of ability to earn income; (d) medical expenses and (e) attorney's fees and costs.

## SECOND CLAIM– DISCRIMINATION AGAINST J.V.

## (29 USC § 794)

150.    Plaintiffs reallege the allegations contained in paragraphs 1-149 as if fully stated herein.

151.    J.V. has multiple learning disabilities, is on the Autism spectrum and is a qualified individual under Section 504 of the Rehabilitation Act of 1973, 29 USC § 794.

152.    J.V.'s disabilities impact her major life activities such as communicating, thinking, reading, focusing and many other aspects of her life.

153.    Defendant has excluded J.V. from participation in, and has denied  J.V. the benefits of, services, programs, and activities that Defendant is required to provide J.V. under pendency and under the FOFDs issued in the impartial hearings that Ms. Vasquez has participated in over many years.

154.    Defendant has committed repeated, multiple violations of the IDEA for a prolonged period of time, demonstrating a gross and negligent, reckless and wanton disregard for J.V.'s special education rights.

155.     Defendant has adopted policies, procedures, protocols and guidance which violate the IDEA, and have applied them to J.V., which constitutes and intentional and reckless disregard of Plaintiffs' rights.

156.     Defendant has excluded J.V. from participation in, and has denied J.V. the benefits of, services, programs, and activities that Defendant is required to provide J.V. as part of an appropriate and free public education and services program for the 2019-2020 school year.

157.     Defendant has excluded J.V. from participation in, and has denied J.V. the benefits of, services, programs, and activities that Defendant is required to provide J.V. as part of an appropriate and free public education and services program for the 2020-2021 school year.

158.     Defendant has excluded J.V. from participation in, and has denied J.V. the benefits of, services, programs, and activities that Defendant is required to provide J.V. as part of an appropriate and free public education and services program for the 2021-2022 school year.

159.     Defendant's actions in each of the school years mentioned above were done in bad faith and in gross misjudgment to intentionally, recklessly and willfully deprive J.V. of her rights as a student with a disability to receive a free and appropriate education.

160.     Defendant's actions in each of the school years mentioned above were part, and in furtherance, of its intent to deny a free and appropriate education to students with a disability such as J.V., as is demonstrated by continuous and systematic failures by the DOE to abide by and implement impartial hearing orders obtained thousands upon thousands of cases.

161.     As a direct and proximate result of the acts of Defendant, J.V. suffered the following injuries and damages: (a) loss of educational opportunity; (b) loss of ability to earn income; (c) medical expenses and (d) attorney's fees and costs.

## THIRD CLAIM– DEPREVATION OF LISA VASQUEZ'S RIGHTS

### (42 USC § 1983)

162.    Plaintiffs reallege the allegations contained in paragraphs 1-161 as if fully stated herein.

163.    Defendant, acting under the color of state and federal law, deprived Lisa Vasquez of her right to stop Defendant from violating Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, through Defendant's discrimination against Ms. Vasquez's daughter J.V. by excluding J.V. from, and depriving her of, special education and related services for the 2019-2020 school year.

164.    Defendant, acting under the color of state and federal law, deprived Lisa Vasquez of her right to stop Defendant from violating Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, through Defendant's discrimination against Ms. Vasquez's daughter J.V. by excluding J.V. from, and depriving her of, special education and related services for the 2020-2021 school year.

165.    Defendant, acting under the color of state and federal law, deprived Lisa Vasquez of her right to stop Defendant from violating Section 504 of the Rehabilitation Act of 1973, 29 USC § 794, through Defendant's discrimination against Ms. Vasquez's daughter J.V. by excluding J.V. from, and depriving her of, special education and related services for the 2021-2022 school year.

166.    Ms. Vasquez. was entitled to stop Defendant from violating Section 504 of the Rehabilitation Act of 1973, 29 USC § 794 for each of the aforementioned school years.  She was also entitled to pursue enforcement of the services for each of the aforementioned school years

under federal and state law, including under the Individuals with Disabilities Education Act, 20 U.S.C. 1400 et seq.

167.   Defendant not only continuously discriminated against J.V. for years and continuously and unlawfully refused to provide J.V. the education and services she was entitled to, but also retaliated against Ms. Vasquez for standing up for her daughter's rights from 2017 through 2022.

168.   Defendant's actions were intentional and deliberate, as it was in part, and in furtherance, of its custom and practice to stop parents of students, such as Ms. Vasquez, from enforcing their rights and their children's rights to a free and appropriate education.

169.   Defendant's actions against Ms. Vasquez were meant to squash any attempt to make it change its custom and practice of depriving students with a disability to their right to a free and appropriate education by disincentivizing parents, like Ms. Vasquez, from pursuing these rights.

170.   Ms. Vasquez has been damaged by the Defendant's repeated discriminatory conduct, refusal to provide educational program and services to her child and Defendant's retaliatory conduct.   Ms. Vasquez suffered the following injuries and damages: (a) severe emotional distress; (b) loss of educational opportunity for her child; (c) loss of ability to earn income; (d) medical expenses and (e) attorney's fees and costs.

WHEREFORE, Plaintiffs demand judgment against Defendant in favor of Plaintiffs in an amount to be determined for each of Plaintiffs' causes of action and granting such other relief as this Court deems just and proper.

Dated: Far Rockaway, New York
        March 30, 2023

Respectfully,

**GULKOWITZ BERGER LLP**
/s/ Shaya M. Berger
By: Shaya M. Berger, Esq.
544 Oak Drive
Far Rockaway, NY 11691
212-208-0006 (tel) | 718-744-9708 (fax)
sberger@gulkowitzberger.com