UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
LISA VASQUEZ, on behalf of herself and her    :
infant Daughter, J.V.,    :
    :
                              *Plaintiffs*,    :    22-cv-03360-PAC
    :
             - *against* -    :    **OPINION & ORDER**
    :
NEW YORK CITY DEPARTMENT OF    :
EDUCATION,    :
    :
                          *Defendant*.    :
-------------------------------------------------------------X

       Plaintiff Lisa Vasquez ("Plaintiff" or "Vasquez") brings this action on behalf of herself and her infant daughter J.V. against Defendant New York City Department of Education ("Defendant" or "DOE"), alleging a deprivation of J.V.'s rights under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400 *et seq*., pursuant to 42 U.S.C. § 1983 ("Count I"); discrimination against J.V. in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Count II"); and retaliation against Vasquez in violation of Section 504 ("Count III").

       On February 15, 2023, the Court granted Defendant's motion to dismiss the Amended Complaint. Plaintiff failed to administratively exhaust certain claims, which deprived the Court of jurisdiction over those claims. For the remaining claims, the Amended Complaint failed to allege facts to support the existence of a municipal practice that violates the IDEA under Section 1983 and failed to allege facts to show discrimination and retaliation under Section 504. On March 31, 2023, Plaintiff amended her claims for the third time. *See* Second Amended Complaint ("Second Am. Compl."), ECF No. 52. Pending before the Court is Defendant's motion to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and

12(b)(6).[1]  Plaintiff opposes the motion.[2]  For the reasons set forth below, Defendant's motion is

DENIED in part and GRANTED in part.

## I. Background

### A. Statutory Background

The IDEA requires the DOE to provide a free appropriate public education ("FAPE") to

all New York City students with disabilities.  *See* 20 U.S.C. § 1412(a)(1)(A).  "To ensure that

qualifying children receive a FAPE, a school district must create an individualized education

program ('IEP') for each such child."  *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 175

(2d Cir. 2012).  An IEP is a written plan that "sets out the child's present educational performance,

establishes annual and short-term objectives for improvements in that performance, and describes

the specially designed instruction and services that will enable the child to meet those objectives."

*L.O. v. New York City Dep't of Educ.*, 822 F.3d 95, 102–03 (2d Cir. 2016).

"'Parents who . . . believe that a FAPE is not being provided to their child may unilaterally

enroll the child in a private school and seek tuition reimbursement from the school district' by

filing what is known as a 'due process complaint.'"  *M.O. v. New York City Dep't of Educ.*, 793

F.3d 236, 239 (2d Cir. 2015) (alteration in original) (quoting *Hardison v. Bd. of Educ. of the*

*Oneonta City Sch. Dist.*, 773 F.3d 372, 376 (2d Cir. 2014)).  "New York has opted for a two-tier

administrative system for review of IEPs."  *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d

240, 245 (2d Cir. 2008).  "In the first tier, a parent can file an administrative 'due process

_____

[1] *See* Notice of Mot. to Dismiss the Second Am. Compl., dated July 28, 2023 [ECF No. 62]; *see also* Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Second Am. Compl. ("Def.'s Br."), dated July 28, 2023 [ECF No. 63]; Reply Mem. of Law in Supp. of Def.'s Mot. to Dismiss the Compl., dated Oct. 31, 2023 [ECF No. 70].

[2] *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp."), dated Sept. 19, 2023 [ECF No. 66].

complaint' challenging the IEP and requesting a hearing before an impartial hearing officer" ("IHO"). *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 526 (2d Cir. 2020); N.Y. Educ. Law § 4404(1).  "That decision can then be appealed to a state review officer of the New York Education Department" ("SRO").  *Cave*, 514 F.3d at 245; N.Y. Educ. Law § 4404(2). Thereafter, any party who remains aggrieved can challenge the SRO's decision in state or federal court.  *See* 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).  An administrative order that is not appealed "shall be final."  20 U.S.C. § 1415(i)(1).

### B. Factual Background

The following allegations are taken from the Second Amended Complaint and administrative orders referenced therein.[3]

Plaintiff is the parent of J.V. who has been "diagnosed with multiple disabilities, including being on the Autism spectrum."  Second Am. Compl. ¶ 2.  J.V. was eleven years old at the time Plaintiff filed this action.  *See id.*  On November 13, 2017, Defendant created an IEP for J.V. tailored to her "speech and language impairment."  *Id.* ¶ 12.  The DOE deferred J.V.'s case to the Community Based Support Team for a placement in a Non-Public School ("NPS"), but J.V. "was not offered an NPS placement or any other alternative placement."  *Id.* ¶¶ 13–15.  The best the DOE could do was offer J.V. an "interim program" in May 2018, but it "was unable to implement those services."  *Id.* ¶ 16.

---

[3] *See* Def.'s Br., Ex. A ("Sept. 2020 D&O") [ECF No. 63-1]; Def.'s Br., Ex. B ("Aug. 2020 D&O") [ECF No. 63-2].  "[D]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  As the Second Amended Complaint incorporates by reference the administrative orders associated with Case Nos. 173490 and 193432, *see, e.g.*, Second Am. Compl. ¶¶ 17–36, 55–60, the Court may properly consider facts contained in them, *see L.B. and T.B. v. New York City Dep't of Educ.*, 21-cv-6626, 2023 WL 1779550, at *1 n.3 (S.D.N.Y. Feb. 6, 2023).

Plaintiff filed two due process complaints to challenge the DOE's administration of services to J.V. during the 2016-2017, 2017-2018, 2018-2019, and 2019-2020 school years.  On May 24, 2018, Plaintiff filed her first complaint (Case #173490), alleging that Defendant failed to provide J.V. with FAPE in the 2016-2017 and 2017-2018 school years.  *Id.* ¶ 17.  On October 16, 2018, the IHO agreed and determined that there was "a prolonged and sustained denial of FAPE." *Id.* ¶ 25; Aug. 2020 D&O at 4.  The IHO ordered that Defendant provide J.V. certain services, but Defendant "did not implement the services."  Second Am. Compl. ¶¶ 26, 29, 32.

On April 1, 2020, Plaintiff filed the second complaint (Case #193432) covering the 2018-2019 and 2019-2020 school years, requesting "that the DOE comply with the prior impartial hearing orders and provide compensatory services."  *Id.* ¶ 55.  On September 13, 2020, the IHO found that "the DOE was obligated to deliver all services required under the orders issued in Case #173490."  *Id.* ¶¶ 56–57.  The IHO concluded that the DOE deprived J.V. of FAPE during the 2018-2019 and 2019-2020 school years.  Sept. 2020 D&O at 5.  The IHO ordered the DOE "to hold an IEP meeting and develop an IEP commensurate with [the] IHO" decision.  Second Am. Compl. ¶ 58.  "The DOE ignored this as well and did not develop such an IEP or provide those services in the 2020-2021 school year."  *Id.* ¶ 60; *see also id.* ¶¶ 63–64.  Plaintiff did not file a separate due process complaint to challenge the DOE's actions taken during the 2020-2021 or 2021-2022 school years.  *See id.* ¶¶ 58, 67.

Due to the DOE's failure to "search for" and "locate services," Plaintiff searched for and found "the Reece school," a "state-approved NPS" for J.V. to attend during the 2019-2020 school year.  *Id.* ¶¶ 37–39.  But the Reece school "was harmful and damaging to J.V., who was attacked by other students daily verbally, physically and sexually."  *Id.* ¶¶ 40–41.  During her time at the Reece school, "J.V. received only a fraction of the services she was entitled to under the second

pendency order issued in Case #173490." *Id.* ¶ 45.  The Reece school also "closed for in person learning" in March of 2020, and "due to her disabilities," J.V. was "not capable" of learning via "online instruction." *Id.* ¶ 44.  After Plaintiff requested help from the Reece school, it informed Plaintiff that J.V. "would not be allowed to return for the upcoming 2020-2021 school year." *Id.* ¶ 43.  Plaintiff "requested" that the DOE "provide placement and services to J.V.," but "Defendant did nothing." *Id.* ¶¶ 48–49.

To make up for the DOE's failure to provide services during the 2020-2021 and 2021-2022 school years, Plaintiff identified the "Leap/Dyslexia Associates ('Leap')" as a provider for a "fraction of the services" to which J.V. was entitled, so Plaintiff enrolled J.V. in the program. *See id.* ¶¶ 61–62, 64.  But "J.V. did not receive the full range and amounts of education programs and services to which she was entitled to receive" during these school years. *Id.* ¶¶ 63–64.  Leap "advised" Plaintiff that J.V. could not "return for the 2022-2023 school year," so Plaintiff contacted "Defendant to request a placement and services." *Id.* ¶ 65.  Defendant failed to provide "one placement," "any services provider," or "a single offer of an option for special education." *Id.*

Plaintiff brings three claims against the DOE.  First, she asserts the DOE violated the IDEA, pursuant to Section 1983, by depriving J.V. of FAPE during the 2019-2020, 2020-2021, and 2021-2022 school years. *Id.* ¶¶ 138–43.  Plaintiff asserts the DOE "has engaged in a custom and practice" of "refus[ing] to follow and abide by administrative orders issued from impartial hearing officers." *Id.* ¶ 74.  Plaintiff contends that the DOE's widespread failure to implement services required by students' IEPs and administrative orders is evinced by *L.V. v. New York City Department of Education*, 1:03-cv-9917-LAP (S.D.N.Y.), a class action filed "to correct longstanding, systemic delays and failures of the DOE to implement impartial hearing orders in New York City." *See id.* ¶ 93.  In that action, the "DOE's counsel" represented to the Court that

Independent Auditors who "verify whether or not the DOE implemented an order or decision" determined that the DOE failed to inform 12,689 parents, including Plaintiff, of the DOE's "failure to timely implement administrative orders." *Id.* ¶¶ 97, 100–01.

Plaintiff's second and third causes of action are for unlawful discrimination and retaliation pursuant to Section 504 of the Rehabilitation Act. *See id.* ¶¶ 152–60 (discrimination); *id.* ¶¶ 163–69 (retaliation).[4]  She alleges that the DOE's "repeated" deprivation of FAPE has left J.V. "many years behind her peers" and constitutes actionable discrimination. *Id.* ¶¶ 132–34, 152–60. Additionally, she asserts that the DOE "retaliated against" Plaintiff for her advocacy on J.V.'s behalf by making "false" and "baseless" allegations of "educational neglect" to the New York City Administration of Children's Services ("ACS") at least four times between 2017 and 2021. *Id.* ¶¶ 78–90.  She avers that the DOE retaliated against her "to ensure that Ms. Vasquez would no longer be able to enforce J.V.'s rights by having ACS remove J.V. from Ms. Vasquez's custody." *Id.* ¶ 91.

### C. Procedural Background

On April 25, 2022, Plaintiff commenced this action. *See* ECF No. 1.  The DOE indicated it planned to move to dismiss the Complaint, which prompted Plaintiff to file an Amended Complaint on September 16, 2022.  *See* ECF Nos. 13, 16.

On January 19, 2023, Plaintiff moved for emergency relief to order the DOE prospectively to fund J.V.'s placement, related services, and transportation costs.  *See* ECF Nos. 29–33.  On February 9, 2023, the Court granted in part and denied in part Plaintiff's request.  *See* Order, ECF No. 42.  The Court granted Plaintiff's request for compensatory transportation services "in a sum

---

[4] Although the Second Amended Complaint appears to assert this claim pursuant to Section 1983, *see* Second Amended Complaint ¶¶ 162–65, the parties construe this claim as one brought directly under Section 504, *see* Def.'s Br. 14–15, so the Court does the same.

and amount to be calculated in line with the 2018 and 2020 administrative orders." *Id.*  The Court denied the request prospectively to fund J.V.'s 1:1 services without prejudice to renewal if the DOE ceased paying the service provider.  *Id.*  The Court also denied Plaintiff's request for prospective funding for an unidentified provider of speech, physical, and occupation therapy without prejudice to renewal.  *Id.*  Plaintiff has not renewed any of these requests or alerted the Court to the DOE's ongoing failure to pay for J.V.'s compensatory services.

On November 23, 2022, Defendant filed a motion to dismiss the Amended Complaint for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* ECF No. 23.  On February 15, 2023, the Court granted Defendant's motion to dismiss.  *Vasquez v. New York City Dep't of Educ.*, No. 22-cv-03360, 2023 WL 2058773, at *1 (S.D.N.Y. Feb. 16, 2023).  The Court lacked subject matter jurisdiction over claims related to the 2020-2021 and 2021-2022 school years because Plaintiff did not satisfy the administrative exhaustion requirement.  *Id.* at *3–4.  In addition, Plaintiff failed to state any claim for relief related to the 2019-2020 school year.  Plaintiff failed to plead a custom or practice pursuant to Section 1983 that deprived J.V. of special education and related services in violation of the IDEA.  *Id.* at *5.  Plaintiff did not sufficiently state a claim for discrimination in violation of Section 504 because the Amended Complaint did not allege Defendant discriminated in bad faith or with gross misjudgment against J.V. by denying her FAPE.  *Id.* at *6.  Finally, Plaintiff did not state a claim for retaliation under Section 504, because she failed to allege a causal connection between her advocacy for J.V. and the adverse action.  *Id.* at *7.  The Court granted Plaintiff leave to amend the Amended Complaint to address these deficiencies.  *Id.* at *7–8.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

A failure to exhaust administrative remedies deprives a federal court of subject matter jurisdiction over the relevant claims.  *See K.M. v. Adams*, No. 20-4128, 2022 WL 4352040 at *3 (2d Cir. Aug. 31, 2022).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of establishing beyond a preponderance of the evidence that subject matter jurisdiction exists.  *Id.*  In reviewing a Rule 12(b)(1) motion to dismiss, the court "must accept as true all material factual allegations in the complaint, but . . . [may] not . . . draw inferences from the complaint favorable to plaintiff[ ]." *J.S. ex rel. N.S. v. Attica Cent. Sch*., 386 F.3d 107, 110 (2d Cir. 2004).  Further, in resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may consider "evidentiary matter . . . presented by affidavit or otherwise." *Kanmen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

### B. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.  "On a motion to dismiss under Rule 12(b)(6), this Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiff['s] favor." *J.L. on behalf of J.P. v. New York City Dep't of Educ.*, 324 F. Supp. 3d 455, 463 (S.D.N.Y. 2018).

## III. <u>Discussion</u>

### A. Exhaustion of Administrative Remedies

Defendant again moves to dismiss Plaintiff's claims relating to the 2020-2021 and 2021-2022 school years pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that the Court lacks subject matter jurisdiction over them because Plaintiff failed to exhaust her administrative remedies. *See* Def.'s Br. 5, 18. While Defendant is correct that Plaintiff did not exhaust her administrative remedies for claims related to the 2020-2021 and 2021-2022 school years, a lawsuit "premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023). For all three claims brought, Plaintiff seeks only backwards-looking compensatory damages, which is "a form of relief everyone agrees IDEA does not provide." *Id.* at 148. Therefore, Plaintiff need not have exhausted her administrative remedies prior to pursuing claims related to J.V.'s denial of FAPE during the 2020-2021 and 2021-2022 school years. *See, e.g.*, *Dale v. Suffern Cent. Sch. Dist.*, No. 18-cv-4432, 2023 WL 6386808, at *11 (S.D.N.Y. Sept. 28, 2023) (holding exhaustion was "not required" for Rehabilitation Act claim where plaintiff sought compensatory damages); *Piotrowski v. Rocky Point Union Free Sch. Dist.*, No. 18-cv-6262, 2023 WL 2710341, at *8 (E.D.N.Y. Mar. 30, 2023) (holding exhaustion inapplicable "because plaintiff seeks only money damages" for ADA and Rehabilitation Act claims). Because the Court has jurisdiction to hear claims related to the 2020-2021 and 2021-2022 school years, the Court now addresses Defendant's arguments in favor of its motion to dismiss, pursuant to Rule 12(b)(6), for failure to state a claim.

**B. Municipal Policy to Deprive Students of FAPE in Violation of the IDEA**

Vasquez brings a claim pursuant to Section 1983 to remedy the DOE's repeated violations of the IDEA.  Under her Section 1983 claim, Vasquez alleges that the DOE has a widespread practice of failing to implement administrative orders.  Second Am. Compl. ¶¶ 137–49.  She asserts it applied that *de facto* policy to J.V., which deprived her of FAPE in violation of the IDEA during the 2019-2020, 2020-2021, and 2021-2022 school years.  *Id.*  Vasquez also alleges that Defendant maintains an express policy of limiting the educational services that can be provided and has failed to supervise and train its employees to implement administrative orders.  Pl.'s Opp. 12.  As noted, to remedy these alleged violations of the IDEA, pursuant to Section 1983, Plaintiff seeks exclusively compensatory damages.  *See* Second Am. Compl. ¶ 149.

Defendant asserts that the Second Amended Complaint fails sufficiently to allege the DOE had an unlawful municipal policy under any of those three theories.  Def.'s Br. 7–9.  This claim also fails, according to Defendant, because Plaintiff does not allege a violation of procedural rights guaranteed by the IDEA, making monetary damages improper.  *Id.* 22–23.

**1. Legal Standard**

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."  *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  Pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), a "governmental entity like DOE is subject to municipal liability under section 1983," *C.S. v. New York City Dep't of Educ.*, No. 1:21-cv-07927, 2022 WL 2163788, at *2 (S.D.N.Y. May 31, 2022), so long as the plaintiff demonstrates the existence of a municipal policy that causes the plaintiff to be subjected

to the deprivation of a federal right, *see BD v. DeBuono*, 130 F. Supp. 2d 401, 437 (S.D.N.Y. 2000).  A plaintiff may allege the existence of a municipal policy in one of four ways:

> (1) a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiffs' . . . rights; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials; or (4) a failure by official policy-makers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.

*Id.* at 438 (citations omitted).

To allege an express policy, a plaintiff must point to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  In addition, a policy may be alleged without it being "formally approved by an appropriate decisionmaker" where the practice is "so widespread as to have the force of law," *i.e.*, "when it is 'common or prevalent throughout the [entity].'"  *Buari v. City of New York*, 530 F. Supp. 3d 356, 398 (S.D.N.Y. 2021) (alteration in original) (quoting *Gleeson v. County of Nassau*, No. 15-cv-6487, 2019 WL 4754326, at *16 (E.D.N.Y. Sept. 30, 2019)).

A municipality's failure to train or supervise its employees can give rise to municipal liability when a policy can be "inferred from evidence of deliberate indifference of supervisory officials to such abuses."  *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012).  Deliberate indifference is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997).  "To state a *Monell* claim based on a failure to supervise, a plaintiff must allege '(1) . . . a pattern of allegations of or complaints about, or a pattern of actual, similar unconstitutional activity

[by city employees], and (2) the municipality consistently failed to investigate those allegations.'"
*Atadzhanov v. City of New York*, No. 21-cv-5098, 2022 WL 4331304, at *11 (S.D.N.Y. Sept. 19,
2022) (first alteration in original) (quoting *Treadwell v. Cnty. of Putnam*, 2016 WL 1268279, at
*4 (S.D.N.Y. Mar. 30, 2016)).  "To state a *Monell* claim based on a failure to train, a plaintiff must
'allege a specific deficiency in the municipality's training.'"  *Id.* (quoting *Moore v. Westchester
Cnty.*, 2019 WL 3889859, at *4 (S.D.N.Y. Aug. 19, 2019)).

"Although monetary damages are not available under the IDEA itself, a plaintiff may
recover monetary damages for a violation of the IDEA pursuant to § 1983."  *Taylor v. Vermont
Dep't of Educ.*, 313 F.3d 768, 786 n.14 (2d Cir. 2002).  Damages are "an available remedy in
actions brought pursuant to 42 U.S.C. § 1983 for violations of the IDEA" where the violation
amounts to a "denial of access to administrative remedies."  *Polera v. Bd. of Educ. of Newburgh
Enlarged City Sch. Dist.*, 288 F.3d 478, 483 & n.5 (2d Cir. 2002); *see also Streck v. Bd. of Educ.
of E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008) (holding that a plaintiff must allege
a "denial of procedural safeguards or administrative remedies" to recover monetary damages).

## 2. Application

Plaintiff asserts that the DOE has an unlawful municipal policy based on three theories.
First, Plaintiff contends that the DOE has a "formal policy" of "offer[ing] only a limited and finite
menu of programs and services to children with disabilities" and will not "offer programs or
services unique to student's needs that fall outside these windows" unless the parent sues.  Pl.'s
Opp. 12 (citing Second Am. Compl. ¶¶ 110–22).  Second, Plaintiff contends that the DOE has
failed "properly [to] train and supervise those responsible for implementing both IEPs and
[administrative decisions] to ensure students with disabilities receive the education and services
they are entitled to receive to such an extent that it amounts to deliberate indifference to the rights

of these students." *Id.*  Finally, Plaintiff asserts that the DOE has a widespread practice and custom of failing "to implement impartial hearing orders in New York City."  *See id.* (citing Second Am. Compl. ¶¶ 91–127).

The Second Amended Complaint lacks allegations to support the first two theories—the DOE's express policy and its failure to train or supervise employees.  The Second Amended Complaint does not cite a specific policy statement, ordinance, or regulation to allege the adoption of an express unlawful policy.  *See Monell*, 436 U.S. at 690.  Instead, Plaintiff supports its argument that the DOE does not offer particular services "absent litigation" with allegations about Plaintiff's inability to obtain certain services for J.V. without litigation.  *See* Second Am. Compl. ¶¶ 110–27.  But "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *see also F.C. v. New York City Dep't of Educ.*, No. 15-cv-6045, 2016 WL 8716232, at *9, *18 (S.D.N.Y. Aug. 5, 2016) (dismissing claim where plaintiff pleaded "only in conclusory fashion that IEP teams cannot recommend special education or related services for extra-curricular activities in IEPs" without "facts to support an inference that this denial resulted from a broad policy or practice").

Likewise, there is no basis in the Second Amended Complaint to infer that the DOE inadequately trained or supervised its employees.  There is no allegation that the DOE was aware of particular violations of the IDEA by subordinate-level employees or that the DOE neglected to investigate such violations.  *See, e.g.*, *Vasquez v. City of New York*, No. 20-cv-4641, 2023 WL 8551715, at *6 (S.D.N.Y. Dec. 11, 2023) (failing to allege that the City failed to investigate or discipline employees "dooms" a failure to supervise claim); *Lopez v. City of New York*, No. 20-cv-2502, 2022 WL 2078194, at *10 (S.D.N.Y. June 9, 2022) (granting motion to dismiss where

plaintiff "pleaded no facts that could give rise to an inference the City took no action in response to any complaints" about employees).   In addition, no allegation in the Second Amended Complaint identifies "a specific deficiency in the city's training program" or establishes that the "deficiency is closely related to the ultimate injury," which is necessary to allege a municipal liability claim based upon the City's failure to train.  *See Buari*, 530 F. Supp. 3d at 400; *see also United States v. New York City Dep't of Educ.*, No. 16-cv-4291, 2017 WL 435940, at *4 (S.D.N.Y. Jan. 31, 2017) (granting motion to dismiss because plaintiffs failed to "allege a causal nexus between a specific training program (or lack thereof) and the constitutional violations alleged"), *report and recommendation adopted*, 2017 WL 1319695 (S.D.N.Y. Apr. 4, 2017).  Therefore, the Second Amended Complaint fails to allege municipal liability based upon the theories that the DOE had an express policy or that the DOE failed to train and supervise its employees.

However, the Second Amended Complaint sufficiently alleges that the "DOE's failure to implement" services for students with disabilities amounts to a widespread policy or custom.  *See* Second. Am. Compl. ¶¶ 93–106, 123.   "To satisfy the policy-or-custom requirement, . . . the plaintiff may allege that the challenged practice 'was so persistent or widespread as to constitute a custom or usage with the force of law' or that the facts 'imply the constructive acquiescence of senior policy-making officials.'"  *Green v. Dep't of Educ. of City of New York*, 16 F.4th 1070, 1077 (2d Cir. 2021) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)); *see, e.g.*, *J.L. on behalf of J.P.*, 324 F. Supp. 3d at 460, 469 (sufficiently alleging "widespread practices" of the DOE's failure to implement "nursing, transportation, and porter services" expressly provided to three "medically fragile children" in their IEPs, which deprived them of access to FAPE across several school years).

Here, the Second Amended Complaint alleges a widespread custom "by citing to complaints" that "contain similar allegations" and "examples of similar misconduct in other cases." *Johnson v. City of New York*, No. 20-cv-3083, 2022 WL 4364879, at \*6 (S.D.N.Y. Sept. 21, 2022), *aff'd*, No. 22-2096, 2023 WL 3607219 (2d Cir. May 24, 2023).  Plaintiff asserts that the DOE's failure to implement services across several school years with respect to J.V. is analogous to instances of the DOE's failure to implement services for other students, which has been litigated in *LV v. New York City Department of Education*, 1:03-cv-9917-LAP (S.D.N.Y.). *See* Second Am. Compl. ¶¶ 32, 37, 45, 61, 64–65, 71, 74, 93–103.  Plaintiff asserts that pursuant to the consent decree entered in that action, Independent Auditors determined that the DOE failed timely to implement administrative orders for students with disabilities in 12,689 instances previously unknown or not communicated to parents. *Id.* ¶¶ 98–101.  Thousands of instances of similar misconduct by the DOE make the conduct "widespread enough, if proved as alleged, to impose § 1983 liability." *See Brooklyn Sch. for Special Child. v. Crew*, No. 96-cv-5014-LAP, 1997 WL 539775, at \*15 (S.D.N.Y. Aug. 28, 1997) (denying motion to dismiss where complaint was "replete with allegations that the various defendants visited harm upon twenty separate plaintiffs by engaging in a pattern and practice of conduct violative of IDEA").  Moreover, that the DOE's failures "recurred over a period of multiple school years provides a degree of confirmation that defendants have a systemic policy of not providing such support services." *See F.C.*, 2016 WL 8716232, at \*9, \*18.  These allegations make "it plausible that the City had engaged in the alleged" practice.  *See Lynch v. City of New York*, 952 F.3d 67, 81–82 (2d Cir. 2020) (sufficiently stating municipal policy where plaintiff cited deposition testimony and "five lawsuits that were pending when the Complaint was filed" that did not result in a finding of liability but provided "plausible indicia that the practice" existed).

Also, Plaintiff has sufficiently alleged that this practice caused the violation of J.V.'s rights. The Second Amended Complaint asserts that the violations occurred because of the DOE's repeated failure to implement services to which J.V. was entitled during several school years. *See* Second Am. Compl. ¶¶ 32, 37, 45, 61, 64–65, 71, 74.

Defendant argues that this claim must nonetheless be dismissed because Plaintiff seeks exclusively monetary damages, and such damages are unavailable for Plaintiff's Section 1983 claim. Def.'s Br. 22–24. A plaintiff may not bring a claim for monetary damages for violations of the IDEA, pursuant to Section 1983, where the claim is one that "challenges the content and sufficiency of the IEP." *See Streck*, 280 F. App'x at 68. In such a circumstance, the "access to administrative remedies" and the statute's procedural safeguards are sufficient. *See Polera*, 288 F.3d at 483 n.5. But Plaintiff does not allege that the DOE deprived J.V. of FAPE because of an inadequacy with J.V.'s IEP or the administrative orders.

Plaintiff's claim is based on Defendant's consistent and systemic pattern of failing to implement administrative orders favorable to students. The DOE's *de facto* policy forecloses access to the statute's administrative remedies and procedural safeguards because the policy makes it effectively impossible to receive the remedies provided pursuant to the administrative system, *i.e.*, those services awarded by the IHO or mandated by the IEP. *Cf. Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 148 (2d Cir. 1983) (permitting Section 1983 damages claim for violations of the IDEA's predecessor statute where plaintiff alleged the school district applied a "policy" of failing to provide services "by preventing handicapped children from gaining access to the procedural safeguards guaranteed by the statute"); *see also, e.g., Doe v. Bedford Cent. Sch. Dist.*, No. 18-cv-11797, 2019 WL 6498166, at *7 (S.D.N.Y. Dec. 3, 2019) (permitting claim for monetary damages where plaintiffs alleged defendants "unlawfully failed to implement and

effectuate the IEP")*.  Importantly, the IHOs do not have the "authority to take [the] action" Plaintiff sought—*i.e.*, to force the DOE to implement their orders.  *Cf. Taylor*, 313 F.3d at 790; *see also* Second Am. Compl. ¶¶ 32, 58–59, 128; *A. ex rel. A. v. Hartford Bd. of Educ.*, 976 F. Supp. 2d 164, 187–88 (D. Conn. 2013) (permitting claim for money damages where plaintiffs alleged a failure to implement IHO's order because "there is no reasonable relief available to them under the administrative process").  Reliance exclusively on administrative remedies would thus leave J.V. with "no redress possible under the administrative scheme." *See Taylor*, 313 F.3d at 790.  Indeed, the Second Amended Complaint makes clear that awarding J.V. additional compensatory services pursuant to the IDEA would be pointless.  Plaintiff "has spent years in the administrative process, obtained multiple pendency and final orders covering at least three different school years, and most of the services awarded remained undelivered."  Second Am. Compl. ¶ 130; *see also id.* ¶ 67 ("J.V. already had hundreds of hours of services the DOE was obligated to provide as compensatory services that year, and the DOE refused to provide any.").  Moreover, at bottom, Plaintiff's claim centers around *enforcing* the IDEA and its administrative remedies, which is a type of claim where monetary damages are permissible.  *See Smith v. Guilford Bd. of Educ.*, 226 F. App'x 58, 63 (2d Cir. 2007) ("It is well-settled that, while the IDEA itself does not provide for monetary damages, plaintiffs may sue pursuant to § 1983 *to enforce its provisions*—including the right to a FAPE— *and to obtain damages for violations of such provisions*."  (emphasis added)).

In addition, the administrative record supports that Defendant may have denied Plaintiff a more discrete "procedural safeguard[ ]."  *See Streck*, 280 F. App'x at 68.  Vasquez testified during one of the hearings before the IHO that she did not receive notice prior to J.V.'s IEP meeting for the 2019-2020 school year and therefore did not have the opportunity to participate in the IEP meeting.  Sept. 2020 D&O at 7.  Defendant submitted relevant meeting notices for the IEP

meetings "with no proof of mailing." *Id.*  Vasquez testified that she did not receive the notices for the IEP meetings.  *See id.*  The absence of a procedural safeguard provided by the statute and its regulations, such as taking steps to ensure parental participation at meetings, *see Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192–93 (2d Cir. 2005), also makes monetary damages an appropriate remedy, *see, e.g.*, *Vinluan on behalf of D.V. v. Ardsley Union Free Sch. Dist.*, No. 19-cv-6496, 2021 WL 3193128, at *9 (S.D.N.Y. July 27, 2021) (dismissing claims against all defendants except one who plaintiff alleged failed to provide "written notice").

At this stage, the Second Amended Complaint supports that recovery via money damages is permissible.  But "whether money damages would be appropriate relief under the circumstances of this action, . . . may be addressed, if appropriate, after discovery is completed." *R.B. ex rel. L.B. v. Bd. of Educ. of City of New York*, 99 F. Supp. 2d 411, 418 (S.D.N.Y. 2000) (denying motion to dismiss Section 1983 damages claim for violations of the IDEA).  Defendant's motion to dismiss the Section 1983 claim is therefore denied except to the extent it is brought pursuant to the express policy and failure to supervise or failure to train theories.

### C. Section 504 of the Rehabilitation Act: Discrimination Against J.V.

Plaintiff asserts that because of her advocacy on J.V.'s behalf, the DOE made false allegations of educational neglect at least four times between 2017 and 2021.  Second. Am. Compl. ¶¶ 78–90.  Defendant contends those allegations are insufficient to allege retaliation pursuant to Section 504 because the Second Amended Complaint does not contain allegations from which the Court could infer a causal connection between Plaintiff's advocacy and the purported retaliation. Def.'s Br. 15–16.

### 1. Legal Standard

Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794.  The Act "prohibits programs and activities receiving federal financial assistance from excluding, denying benefits to, or discriminating against 'otherwise qualified' individuals with a disability." *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196 (2d Cir. 2014) (citation omitted).  To allege a *prima facie* violation under Section 504, the plaintiff must allege (1) she "is a qualified individual with a disability"; (2) "the defendant is subject to one of the Acts"; and (3) she "was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of h[er] disability." *Id.* at 196–97.

To bring a claim under Section 504 based on a failure to provide FAPE in violation of the IDEA, the plaintiff must allege "something more than a mere violation of the IDEA." *Cianciotto on behalf of D.S. v. New York City Dep't of Educ.*, 600 F. Supp. 3d 434, 459 (S.D.N.Y. 2022).  Specifically, "[a] § 504 violation 'may be predicated on the claim that a disabled student was denied access to a free appropriate education, as compared to the free appropriate education non-disabled students receive,' where defendants are shown to have 'acted with bad faith or gross misjudgment.'" *F.C.*, 2016 WL 8716232, at *13 (quoting *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 841 (2d Cir. 2014)).  "The plaintiff is not required to show personal animosity or ill will." *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005).  "Rather, intentional discrimination may be inferred when a school district acts

with gross negligence or reckless indifference in depriving a child of access to a FAPE." *K.C. v. Chappaqua Cent. Sch. Dist.*, No. 16-cv-3138, 2019 WL 6907533, at *8 (S.D.N.Y. Dec. 19, 2019).

### 2. Application

Plaintiff alleges that "Defendant has committed repeated, multiple violations of the IDEA for a prolonged period of time, demonstrating a gross and negligent, reckless and wanton disregard for J.V.'s special education rights." Second Am. Compl. ¶ 154. An IHO determined that Defendant deprived J.V. of FAPE across four school years. *Id.* ¶ 25; Sept. 2020 D&O at 5; Aug. 2020 D&O at 9. During that time, "JV was out of school for a minimum of approximately twelve months during . . . the first two years after her Turning 5 IEP, the equivalent of a full school year for JV." Aug. 2020 D&O at 5. That delay partially was due to the DOE's failure to find a suitable placement. *Id.* at 8–9. Yet, the DOE "did not provide JV with any education or services during the time she was out of school." *Id.* at 5. J.V. had additional gaps in her schooling during other times when the DOE did not offer an NPS placement. *See* Second Am. Compl. ¶¶ 43, 61–62. The DOE also repeatedly failed to respond to Plaintiff's requests to timely implement J.V.'s placements and services pursuant to her IEP and the administrative orders. *Id.* ¶¶ 49, 61, 65; Sept. 2020 D&O at 6; Aug. 2020 D&O at 6. In total, Plaintiff contends that the DOE failed to implement services mandated by J.V.'s IEPs and the administrative orders across approximately six school years. Sept. 2020 D&O at 8; Second Am. Compl. ¶¶ 16, 21, 32, 36–37, 48, 60, 64, 68.

Plaintiff adds that "Defendant has adopted policies, procedures, protocols and guidance which violate the IDEA, and have applied them to J.V., which" amounts to "intentional and reckless disregard of Plaintiffs' rights." Second. Am. Compl. ¶ 155. Plaintiff alleges that the DOE's failure to implement services for J.V. is consistent with the DOE's systemic failure to implement services for thousands of other students litigated in *LV v. New York City Department*

*of Education. See id.* ¶¶ 32, 37, 45, 61, 64–65, 71, 74, 93–103.  More specifically, J.V. was among the thousands of students who Auditors determined received a favorable administrative order that the DOE failed to implement timely.  *Id.* ¶¶ 100–01

These allegations are sufficient to allege bad faith or gross misjudgment to bring a Section 504 claim based on violations of FAPE.  *See, e.g.*, *L.B. v. New York City Dep't of Educ.*, No. 21-cv-6626, 2023 WL 1779550, at *13 (S.D.N.Y. Feb. 6, 2023) ("Plaintiffs' allegations that T.B. missed two years of credit-bearing high school instruction due to Defendants' discriminatory High School Choice Program and was provided inadequate high school-level services state claims under the Rehabilitation Act."); *F.C.*, 2016 WL 8716232, at *17 (sufficiently pleading bad faith and gross misjudgment with allegations about defendants' failure to provide FAPE "over a series of years," failure to implement the IEP, "decertification" of services "without a proper prior reevaluation," failure to provide evaluations prior to IEP meetings, and failure to allow input regarding the IEPs at IEP meetings); *M.H. ex rel. K.H. v. Mt. Vernon City Sch. Dist.*, No. 13-cv-3596, 2014 WL 901578, at *7 (S.D.N.Y. Mar. 3, 2014) (holding that allegations of the "numerous and systemic failures to identify those students in need of special education services and timely to create and implement appropriate IEPs—together with their assertions that [defendants] were aware of but failed to remedy these failures—are sufficient to withstand a motion to dismiss"); *R.B. ex rel. L.B.*, 99 F. Supp. 2d at 419 ("Plaintiff has alleged sufficient facts to support her allegations of bad faith and gross misjudgment, including defendants' failure to take any action to implement L.B.'s 1996 IEP from May to September 1996" and "defendants' failure to timely

implement the order of the hearing officer.").[5]  Thus, Defendant's motion to dismiss the Section 504 discrimination claim is denied.

### D. Section 504 of the Rehabilitation Act: Retaliation Against Vasquez

Plaintiff alleges that the DOE took four retaliatory actions in response to her advocacy for J.V.  She alleges that in response to the administrative cases pending in 2017 to 2019, a DOE employee called ACS and made false complaints of educational neglect.  Second Am. Compl. ¶¶ 78–79, 81.  Plaintiff alleges the third instance of retaliation occurred while she was trying to find a new placement for J.V. in the spring of 2020.  *Id.* ¶ 83.  Finally, in May or June of 2022, a DOE employee made a false complaint to ACS, which was precipitated by her complaint filed in this action in April of 2022.  *Id.* ¶ 85; Pl.'s Opp. 17–18.

#### 1. Legal Standard

To state a *prima facie* claim of retaliation, a plaintiff must allege that (1) she "was engaged in protected activity"; (2) "the alleged retaliator knew that plaintiff was involved in protected activity"; (3) "an adverse decision or course of action was taken against plaintiff"; and (4) "a causal connection exists between the protected activity and the adverse action."  *See Weixel v. Bd. of Educ.*, 287 F.3d 138, 148 (2d Cir. 2002).  If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a "legitimate, non-retaliatory reason" for the adverse action.  *See Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).

"In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in

---

[5] Defendant moves to dismiss Plaintiff's claim for emotional distress damages under Section 504. Def.'s Br. 13, 19–20.  The Court previously dismissed with prejudice Plaintiff's claim for these damages.  *Vasquez*, 2023 WL 2058773, at *8.  To the extent Plaintiff re-alleges a claim for emotional distress damages for violations of Section 504, it is dismissed.

time by the adverse . . . action.'" *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) (quoting *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1178 (2d Cir. 1996)).  Where the plaintiff has alleged "mere temporal proximity" between the protected activity and an adverse action to show causality, as Plaintiff does here, "the temporal proximity must be 'very close.'" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," *Gorman-Bakos*, 252 F.3d at 554, but courts in this District "have consistently held that the passage of two to three months between the protected activity and the adverse . . . action does not allow for an inference of causation," *Kouakou v. Fideliscare New York*, 920 F. Supp. 2d 391, 401 (S.D.N.Y. 2012) (quoting *Murray v. Visiting Nurse Servs. of NY.*, 528 F.Supp.2d 257, 275 (S.D.N.Y. 2007)).

### 2. Application

Defendant argues that Plaintiff has not sufficiently alleged a causal connection between Plaintiff's advocacy and the adverse actions.  Def.'s Br. 15.  It asserts that when Plaintiff relied on the existence of temporal proximity in the Amended Complaint, "this Court was not 'persuaded.'" *Id.*  More precisely, this Court explained that Plaintiff alleged she "repeatedly advocated on J.V.'s behalf over the span of five years without any retaliation," which did not "show why [Defendant] would retaliate in this way at this specific time." *Vasquez*, 2023 WL 2058773, at *7 (alteration in original) (quoting *Vinluan v. Ardsley Union Free Sch. Dist.*, No. 19-cv-10674, 2021 WL 1063482, at *10 (S.D.N.Y. Mar. 18, 2021)).  Defendant's argument ignores the substance of the amended allegations.

In contrast with the Amended Complaint, the Second Amended Complaint alleges a specific instance of advocacy that was closely followed by an adverse action.  The Second

Amended Complaint alleges that after filing this case in April of 2022, a DOE employee made a false complaint of educational neglect to ACS in May or June of 2022 to prevent her from further advocating for J.V.  Accepting the allegations as true, as the Court must, a false report made one or two months after Plaintiff's advocacy is routinely viewed as sufficient to allege a causal connection to survive a motion to dismiss.  *See, e.g.*, *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110–11 (2d Cir. 2010) (noting that "five months is not too long to find the causal relationship" and holding that "at most two months" between the plaintiff's complaint and the adverse action sufficiently established a *prima facie* case of retaliation); *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-cv-9778, 2019 WL 1437823, at *38 (S.D.N.Y. Mar. 29, 2019) (sufficiently alleging a causal connection where the alleged retaliation occurred "within a little over two months" of when defendants learned of the protected activity, *i.e.*, plaintiff's complaint that student was denied FAPE, at the time of the IHO's decision).  Accordingly, Plaintiff's retaliation claim related to the incident in May or June of 2022 survives the motion to dismiss.  That said, Plaintiff's other instances of purported adverse actions in 2017, 2019, and 2020, fail to allege any temporal proximity of at least a few months between a specific instance of advocacy and an adverse action.  Plaintiff's claim based on those purported instances of retaliation is dismissed.

## IV. <u>Conclusion</u>

For the reasons stated, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss the Second Amended Complaint.  Defendant's motion to dismiss is DENIED with minor exceptions.  Specifically, the motion is GRANTED with respect to Plaintiff's Rehabilitation Act claims based on retaliation that purportedly occurred in 2017, 2019, and 2020 and those seeking emotional distress damages, and it is GRANTED with respect to the Section 1983 claim that is based on the theories that the DOE had an express policy and failed to train or supervise its

employees.  Apart from those exceptions, the motion to dismiss is DENIED.  The Clerk of Court is respectfully directed to close the motion at ECF No. 62.

Dated: New York, New York                    SO ORDERED.
      March 28, 2024

_____
HONORABLE LORETTA A. PRESKA
United States District Judge